UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JVON D. BYNUM,

      Petitioner,

                                CASE NO. 2:07-CV-12767
v.                             JUDGE STEPHEN J. MURPHY, III
                                MAGISTRATE JUDGE PAUL J. KOMIVES

SHIRLEE A. HARRY,

      Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.     *Procedural History*

      1.      Petitioner Jvon D. Bynum is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

      2.      On February 5, 2003, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, first-degree home invasion, MICH. COMP. LAWS § 110a(2), unlawfully driving away a motor vehicle, MICH. COMP. LAWS § 750.413, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On February 20, 2003, he was sentenced to concurrent terms of 20-30 years' imprisonment for the armed robbery conviction, 10-20 years' imprisonment for the home invasion conviction, 3-5 years'

---

[1] By Order entered this date, Shirlee Harry has been substituted in place of Willie O. Smith as the proper respondent in this action.

imprisonment for the unlawfully driving away a motor vehicle conviction, and 2-3 years' imprisonment for the felon in possession of a firearm conviction, and to a mandatory 2 year consecutive sentence for the felony firearm conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S MOTION FOR SUBSTITUTE COUNSEL.

    II.    THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S MOTION FOR A MISTRIAL.

    III.    APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Bynum*, No. 248094 (Mich. Ct. App. Dec. 28, 2004) [hereinafter "Ct. App. Op."]

    4.    Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Bynum*, 474 Mich. 854, 702 N.W.2d 578 (2005).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 3, 2007. As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts.

    6.    Respondent filed her answer on September 14, 2007. She contends that petitioner's claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

    Petitioner's convictions arise from a robbery that took place in Detroit, Michigan on

October 31, 2002. The evidence adduced at trial was accurately summarized in petitioner's brief in the Michigan Court of Appeals:

> It was alleged that on or about October 31, 2002, at the location of 7243 Fielding, City of Detroit, County of Wayne, State of Michigan, defendant did, while armed with a handgun, and he was ineligible to possess same, break and enter the dwelling, rob Edward Pociask, and take his vehicle.
> The people were represented by Ms. Nicole Blank, assistant county prosecutor; defendant by Mr. William P. Heapy.
> The following witnesses testified: Edward Pociask, Detroit Police Officer Paul Carmona, Detroit Police Officer Joseph Marsh, Detroit Police Officer Bernard Gallon, Detroit Police Officer Mia Nikolich, Detroit Fire Department Dennis Holmes, Carolyn Nichols, Sheemka Bynum.
> The following exhibits were admitted: constitutional rights form, statement, stipulations.
> Prior to trial, the court denied defendant's request for new counsel. (I, 3-9). The court dealt with matters concerning his subsequent involvement in a fatal automobile accident which resulted in his stay in a hospital. (I, 9-17).
> A jury was empanelled and preliminarily instructed. (I, 17-222).
> Both parties agreed not to get into the specifics concerning an accident defendant was in and agreed defendant had been previously convicted of a felony. (I, 233-238).
> Mr. Pociask testified on the night in question he was at home, that a white male knocked on his front door, which he answered, that he did not know him, and a few minutes later he heard a noise outside, went to the front door, that the same person prevented him from closing the door, that the white male and two black males forced the door open and entered, gave a description of the two black males, which included one being heavier than the other one, that he thought defendant was one of them, but was not sure because the two men were wearing hats, that the heavier one demanded money, that he was hit with a gun, that they asked where his gun was, that all three went upstairs, he gave his shotgun to one of the black males, that one guarded him while the others began to ransack the house, taking various items, that at the time he did not know their names, that his keys to his car were also taken, as was his car, that after he called the police and they arrived, he gave a description of the individuals as well as his car to them, that later that evening, the police called and told him his car had been found, admitted he was unable to identify defendant because two were wearing hats which covered part of their faces, although defendant looked the [sic] about the size of the heavier individual. (I, 239-272).
> Officer Carmona testified to responding to the location, with his partner, Officer Gallon, that he received a description of the individuals involved, that he later learned the vehicle was recovered, that he later guarded defendant at the hospital. He agreed his report did not indicate the weight of the heavier

individual. (I, 272-283).

The court dealt with a problem concerning information about the accident, permitting evidence defendant was the driver, but excluding evidence someone died in the accident. (II, 3-11).

Officer Marsh testified to responding to an automobile accident, which involved defendant, who was possibly the driver, that a white male and two other black males were also involved, that defendant was placed under arrest. (II, 12-17).

Officer Williams testified to responding to the accident, that he gave a description of the individuals. (II, 18-21).

Officer Gallon also testified to responding to the residence, that he received a list of stolen items, as well as descriptions of the individuals involved. (II, 22-28).

Officer Nikolich testified to responding to the accident, defendant was seated in the driver's seat, which was not included in her report, that she gave a description of the other individuals also in the vehicle. (II, 29-34).

Lt. Holmes testified to responding to a burning vehicle, identified defendant as being one of the individuals present, that while he was unable to give a description of any of the other persons he saw at the vehicle, he was able to give a description of one of them, as being a light skinned slim black male. (II, 35-39, 105-106).

Sergeant Nichols, officer-in-charge of the case, testified to taking a statement from defendant while he was in the hospital, that he was a suspect in the offense and under arrest, that she advised him of his Miranda rights, that she had first attempted to interview defendant shortly after his admission to the hospital, returning a few days later, that defendant appeared under medication by a doctor, that defendant's mother and aunt were also in the room assisting defendant in eating, that someone died in the car accident, that defendant was unable to sign his name, that defendant did not appear to have bandages on, that she did not believe the individual that died in the accident was a suspect. (II, 40-59, 70-86, 93).

The court denied the motion for mistrial in reference to testimony concerning the accident and fire. (II, 59-69).

Outside the presence of the jury, the court received information as to why the fourth individual was not a suspect in the offense, finding the witness could not testify as to how the officer determined that the fourth individual was not a suspect. (II, 86-93).

A stipulation was read into the record concerning the felon in possession of a firearm charge. (II, 93-96).

The court permitted, over objection, the prosecutor to recall Lt. Holmes for a description of Mr. Wimms, who died in the automobile accident. (II, 96-104).

Prosecution rested. (II, 107).

A motion for directed verdict was denied. (II, 108-118).

>       Ms. Bynum, sister of defendant, testified as to Mr. Wimms' complexion. (II, 122-123).
>       Defense rested. (II, 123).
>       Closing arguments were made by the prosecutor (II, 124-142, 157-162), and defense. (II, 142-157).
>       The jury was instructed. (II, 162-182).
>       Defendant was found guilty as charged.

Def.-Appellant's Br. on Appeal, in *People v. Bynum*, No. 248094 (Mich. Ct. App.), at 2-6 (footnote omitted).

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

>       (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

5

arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does

not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ineffective Assistance of Counsel Claim (Claim III)*

Petitioner contends that counsel rendered constitutionally ineffective assistance at trial. Specifically, petitioner contends that counsel was ineffective for failing to procure certain medical records. Petitioner also suggests that counsel was unprepared, not representing his best interests, and acted irresponsibly when he failed to introduce certain evidence. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address

7

both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

Petitioner first contends that trial counsel's failure to obtain certain medical records deprived him of his constitutional right to effective assistance of counsel. Petitioner's Writ of Habeas Corpus at 4. Petitioner suggests that the medical records were essential to his defense and that their absence deprived him of his right to a fair trial. *Id*. Petitioner fails to acknowledge that, in order to prevail under *Strickland*, he must establish that trial counsel's conduct fell outside of reasonable professional standards. *Strickland*, 466 U.S. at 688. Had counsel negligently failed to introduce the medical records, petitioner would likely be correct in asserting that trial counsel's conduct was objectively unreasonable. However, in the instant case, the record reflects that trial

counsel subpoenaed the medical records in question and actively sought to use them as a line of defense. The trial record indicates that counsel diligently requested the relevant medical records, but that the hospital had lost or misplaced them. Jury Trial Tr., Vol. I, at 14. At no time did petitioner dispute the fact that trial counsel sought the relevant medical records, but due to circumstances outside of his control, was unable to procure them. Petitioner merely states that counsel should have obtained said records, irrespective of whether they were actually available. Because trial counsel took steps to obtain the medical records, he acted reasonably pursuant to "prevailing professional norms." *Strickland*, 466 U.S. at 688. In the instant case, counsel's performance cannot be deemed unreasonable after "considering all the circumstances." *Id*. Trial counsel cannot be deemed ineffective for failing to obtain unavailable evidence. *See Shurn v. United States*, No. 4:07-CV-1652, 2008 WL 4938416, at *3 (E.D. Mo. Nov. 14, 2008) ("The most diligent and skillful attorney, however, cannot introduce evidence that does not exist.")

Petitioner next suggests that counsel was ineffective because he was not properly representing his interests, and he was not adequately prepared for trial. These assertions are vague and unsubstantiated and are not sufficient to rebut the strong presumption that trial counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689. Petitioner offers no factual support for these allegations, and therefore they are insufficient to rebut this strong presumption.

Lastly, petitioner claims that "[t]rial counsels [sic] failure to… introduce a photograph of the deceased was negligent and professionally irresponsible." Appellant's Application for Leave to Appeal at 17. Petitioner suggests that the photograph would have cast a reasonable doubt as to petitioner's guilt because the decedent was close, in height and weight, to the description of one

of the assailants provided by the complainant. Trial counsel did properly use this alternate explanation as an avenue of defense. Counsel properly developed evidence that indicated that there was another individual that matched the complainant's description and could have been the third burglar. Indeed this theory was used in trial counsel's closing argument. Jury Trial Tr., Vol. II, at 148. The failure to introduce a picture of the decedent was not unreasonable because counsel had already developed this defense through other means. As the Michigan Court of Appeals noted, "[the] similarity in height and weight was attested to and described at trial." Ct. App. Op. at 3. Failing to introduce a picture of the decedent does not constitute constitutionally deficient assistance of counsel because the line of defense was developed through other means.

After reviewing petitioner's grounds for his ineffective assistance claim, it is apparent that he has not established any attorney error at trial. Because petitioner cannot establish that trial counsel acted unreasonably according to professional standards, he is unable to satisfy the performance prong of the *Strickland* test. Accordingly, it is unnecessary to address the prejudice prong. *Strickland*, 466 U.S. at 697. Petitioner's ineffective assistance claim should be denied for a failure to establish attorney error. The state courts' decisions did not result in an unreasonable application of the governing Supreme Court precedent, and thus habeas relief should be denied with respect to the ineffective assistance claim.

E.     *Denial of Substitute Counsel Claim (Claim II)*

Petitioner contends that the trial court improperly denied his motion for substitute counsel. Because petitioner failed to show good cause meriting a substitution, and because substitution would have resulted in significant delay, the trial court properly denied petitioner's motion. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

The Sixth Amendment provides, in relevant part, that "[in] all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his Defense." U.S. CONST. amend. VI. This right contemplates a corollary right to counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, "[although] the Sixth Amendment contemplates a right to counsel of choice, that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel." *Haynie v. Furlong*, No. 98-1177, 1999 WL 80144, at *1 (10th Cir. Feb. 17, 1999). As the Supreme Court recently explained, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Further, the right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must be aware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 835 F.2d 1013, 1017 (6th Cir. 1988); *see also, Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the court's authority to control its docket.")). Further, as the Supreme Court has explained, "while the right to select and be represented by

11

one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)). Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

    2.    *Analysis*

In the instant case, petitioner moved for substitute counsel on the ground that he felt as though trial counsel was "not in [his] best interest." Jury Trial Tr., Vol. I, at 9. Specifically, petitioner stated before trial that his motion for substitute counsel should be granted because he felt as though counsel was not adequately prepared, counsel was stuttering, counsel was timid, and counsel was "unready to go." *Id*. at 8. None of the above mentioned grounds constitute a valid basis for granting a motion for substitute counsel. As noted above, indigent defendants have no legal right to preferred counsel. *Wheat*, 486 U.S. at 159. Thus, a petitioner must show good cause to warrant substitution of counsel. *Smith*, 923 F.2d at 1320. Petitioner failed to

demonstrate that an impasse existed and he was therefore not legally entitled to substitute counsel. Merely asserting that counsel is not in one's best interest is not a legally sufficient basis for substitution. Petitioner failed to realize that he has no legal right to a meaningful attorney-client relationship, but only the right to an effective advocate. *See Morris v. Slappy*, 461 U.S. 1, 13 (1983). Petitioner, in his motion for substitute counsel, failed to demonstrate that trial counsel was ineffective. Accordingly, the trial court properly denied his motion.

Moreover, the trial court has the ability to balance the needs of the defendant against the interest in judicial economy. *Lockett*, 740 F.2d at 413. In the instant case, petitioner moved for substitute counsel moments before trial was set to begin. If this motion had been granted, trial would have been delayed for a significant amount of time, and the jury, that was set to arrive any moment, would have been sent away. Jury Trial Tr., Vol. I, at 5. When balancing the inefficient result of granting the motion against the flimsy grounds raised for relief, it is clear that the trial court properly decided the motion. Petitioner's motion indicated that he thought another attorney would do a better job. This was not a strong enough interest to justify the inefficiencies that would surely have ensued had the motion been granted.

The trial court properly determined that petitioner was not legally entitled to substitute counsel because he felt as though counsel was "not in [his] best interest." *Id*. at 9. Furthermore, the trial court properly exercised its right to control its own docket by declining to delay the proceedings. Accordingly, the trial court's decision did not result in an unreasonable application of Supreme Court precedent, and the petitioner should not be afforded habeas relief for this claim.

F.	*Denial of Petitioner's Motion for a Mistrial Claim (Claim I)*

Petitioner contends that his motion for a mistrial was improperly denied. Specifically, petitioner suggests that the trial court made improper evidentiary rulings that resulted in a violation of his constitutional right to a fair trial. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional

protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

Petitioner contends that the trial court erred in denying his motion for a mistrial. Specifically, petitioner alleges that the state court's evidentiary rulings regarding the fatal car accident resulted in undue prejudice. On habeas review, a federal court should generally not question the validity of the state court's rulings on state law, particularly evidentiary rulings. *See Cooper*, 837 F.2d at 286. As noted above, habeas relief may be granted for an erroneous evidentiary ruling only where the ruling results in a violation of the petitioner's constitutional rights. *Barrett*, 169 F.3d at 1163. Here, petitioner's constitutional rights were not violated when evidence regarding the fatal car accident was admitted. Both the trial court and the Court of Appeals noted that evidence regarding the fatality could in fact work in petitioner's favor by eliciting juror sympathy.

Because the evidentiary ruling did not result in a due process violation, the court should decline to disturb the state courts' evidentiary rulings and deny habeas relief for this claim.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2009

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on July 21, 2009.
>
> s/Eddrey Butts  
> Case Manager